**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

| | |
|---|---|
| **WILLIAMS LAND CLEARING,** | |
| **GRADING AND TIMBER LOGGER, LLC,** | **CASE NO. 22-02094-5-PWM** |
| | **CHAPTER 11** |
| **DEBTOR.** | |

---

| | |
|---|---|
| **WILLIAMS LAND CLEARING,**<br>**GRADING AND TIMBER LOGGER, LLC,**<br><br>*Plaintiff*,<br><br>**vs.**<br><br>**APEX FUNDING SOURCE, LLC and**<br>**YEHUNDA KLEIN a/k/a JAY KLEIN,**<br><br>*Defendants*. | **AP NO. 23-00024-5-PWM** |

---

**NOTICE OF APPEAL TO THE UNITED STATES DISTRICT**
**COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

Defendants APEX FUNDING SOURCE, LLC ("AFS," "Apex," or "Corporate Defendant") and YEHUNDA KLEIN a/k/a JAY KLEIN ("Klein" or "Individual Defendant") (collectively, "Defendants"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001, 8002, 8003, and 8004, hereby gives notice of its appeal to the United States District Court for the Eastern District of North Carolina, from the Order Denying Motion to Dismiss [D.E. 62]  (the "Order") entered by the Honorable Pamela W. McAfee, United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") on February 8, 2024, a copy of which is attached hereto as **EXHIBIT 1**.

The identities of the parties to the Order, from which this appeal is taken, as well as the

names and contact information for their respective counsel, are as follows:

**Debtor/Plaintiff/Appellee:**    **WILLIAMS LAND CLEARING,**
**GRADING AND TIMBER LOGGER, LLC**
William Janvier
Kathleen O'Malley
STEVENS MARTIN VAUGHN & TADYCH, PLLC
6300 Creedmoor Road, Suite 170-370
Raleigh, North Carolina 27612

Counsel for Debtor-Plaintiff Williams Land Clearing, Grading and Timber Logger, LLC

**Defendant/Appellant:**    **APEX FUNDING SOURCE, LLC and YEHUDA KLEIN a/k/a JAY KLEIN**
Joseph Z. Frost
jfrost@bbflawfirm.com
BUCKMILLER, BOYETTE & FROST, PLLC
4700 Six Forks Road
Suite 150
Raleigh, North Carolina 27609
T; 919-296-5040
F: 919-977-7101

Counsel for Defendant Apex Funding Source, LLC and Yehuda Klein a/k/a Jay Klein

Respectfully submitted this, the 22nd day of February, 2024

**BUCKMILLER, BOYETTE & FROST, PLLC**

BY:   s/Joseph Z. Frost             

JOSEPH Z. FROST, NCSB No. 44387
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: (919) 296-5040
F: (919) 977-7101

Counsel for Defendant Apex Funding Source, LLC and Yehuda Klein a/k/a Jay Klein

SO ORDERED

SIGNED this 8 day of February, 2024.

Pamela W. McAfee
United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

**Williams Land Clearing, Grading, and
Timber Logger, LLC,**

    **Debtor.**

Case No.
**22-02094-5-PWM**
**Chapter 11**

---

    **Williams Land Clearing, Grading, and
Timber Logger, LLC,**
        **Plaintiff,**
   **v.**

    **Apex Funding Source LLC and Yehuda
Klein a/k/a Jay Klein,**
        **Defendants.**

**Adversary Proceeding
No. 23-00024-5-PWM**

### ORDER DENYING MOTION TO DISMISS

The matter before the court is the motion to dismiss this adversary proceeding filed by

defendants Apex Funding Source LLC (Apex) and Yehuda Klein pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding

by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Plaintiff Williams Land

Clearing, Grading, and Timber Logger, LLC (WLC) opposes the motion. A hearing took place in

Raleigh, North Carolina, on December 14, 2023.

**EXHIBIT**

**1**

## PROCEDURAL BACKGROUND

WLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 16, 2022. WLC filed the complaint in this adversary proceeding on April 26, 2023, D.E. 1, and an amended complaint on July 21, 2023, D.E. 14. The amended complaint asserts six claims for relief, including, against both Apex and Mr. Klein: avoidance and recovery of fraudulent transfers pursuant to §§ 548 and 550 of the Bankruptcy Code; and against Apex only: avoidance of preferential transfers pursuant to § 547 of the Bankruptcy Code; Unfair or Deceptive Trade Practices under North Carolina law, N.C. Gen. Stat. § 75-1.1, *et. seq.*; equitable subordination; and an objection to the claim filed by Apex in the bankruptcy case.[1]

On June 26, 2023, Apex and Mr. Klein filed a joint motion to dismiss the original complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, D.E. 9, and brief in support, D.E. 10. They filed a motion to dismiss the amended complaint on August 28, 2023, D.E. 24. The defendants first contend that WLC's claims for relief are barred and precluded by the doctrines of *Rooker-Feldman* and collateral estoppel. The defendants further contend that WLC has failed to state plausible claims for relief with respect to the claims for equitable subordination, avoidance of fraudulent transfers, and unfair and deceptive trade practices.[2] Finally, the defendants maintain that WLC failed to state any claim against Mr. Klein, as Mr. Klein was Apex's counsel and thus merely a conduit to the transactions at issue between Apex and WLC.

---

[1] On July 7, 2023, before the amended complaint was filed, Commercial Funding, Inc. filed a motion to intervene in this adversary proceeding. D.E. 11. That motion was allowed by order dated November 15, 2023, D.E. 39, and Apex's motion to dismiss the intervenor complaint, D.E. 60, is pending. The intervention does not impact the motion now before the court.

[2] At the hearing, Apex conceded that the amended complaint states a claim for relief under § 547 of the Bankruptcy Code.

2

## FACTUAL ALLEGATIONS OF THE COMPLAINT

The amended complaint alleges the following facts in support of its claims against Apex and Mr. Klein: The relationship between WLC and Apex arises from a merchant cash advance agreement dated March 8, 2022 (the MCA Agreement). D.E. 14 at ¶ 8; *see also* Claim No. 64-1 at 4. The MCA Agreement provided that the purchase price of $250,000 was to be funded to WLC minus a $5,000 underwriting fee, in return for weekly payments by WLC in the amount of $18,750. D.E. 14 at ¶ 9. According to the MCA Agreement, the weekly payment amount was intended to represent 13% of WLC's receivables, and was to be paid until the total amount of $337,500 was paid by WLC to Apex. *Id.* The MCA Agreement contains a choice of law provision stating that New York law governs the agreement. *See* D.E. 10-2 at 8, ¶ 39. Apex filed a UCC-1 financing statement with the North Carolina Secretary of State, asserting a security interest in virtually all of WLC's assets. D.E. 14 at ¶ 10.

On May 10, 2022, Apex filed a lawsuit in the Supreme Court of the State of New York, Queens County, to collect $187,500 allegedly remaining due under the MCA Agreement, plus contractual costs of $75,000 and default account fees of $2,500 (the New York Litigation). *Id.* at ¶ 11. Mr. Klein was the attorney for Apex in the New York Litigation. On July 11, 2022, WLC signed a Stipulation of Settlement with Apex that was filed by Mr. Klein in the New York Litigation on July 28, 2022. *Id.* at ¶¶ 12, 13. The Stipulation of Settlement provided that WLC would pay $165,000 to Apex in monthly payments of $19,285.71 plus one payment of $30,000 directly from one of WLC's customers. *Id.* at ¶ 13. Mr. Klein filed an affirmation in the New York Litigation stating that Apex received a payment of $30,159.42, but that WLC failed to make any of the monthly payments outlined in the Stipulation of Settlement. *Id.* at ¶ 14. On August 17, 2022, a judgment was entered against WLC in the New York Litigation in the

3

amount of $138,577.17, comprised of $134,840.58 allegedly owed under the MCA Agreement, $3,291.59 in interest, and costs of $455. *Id.* at ¶ 15, Ex. A (the Judgment). The Judgment was based on WLC's default under the Stipulation of Settlement. *Id.* at ¶ 16.

Mr. Klein, on behalf of Apex, sent lien and collection notices to WLC's customers in an effort to collect on Apex's claim. *Id.* at ¶ 17. Domtar, one of WLC's customers, paid Apex or Mr. Klein the amount of $30,159.42 on July 14, 2022. *Id.* at ¶ 19. WLC later determined that Domtar made an additional payment to Mr. Klein in the amount of $48,782.06 on June 9, 2022. *Id.* at ¶ 26. WLC was never credited with all of the payments made to Apex or to Mr. Klein by either WLC or its customers. *Id.* at ¶¶ 25, 27. WLC or its customers paid Apex or Mr. Klein at least $228,941.48 toward the debt incurred under the MCA Agreement. *Id.* at ¶ 28.

The Apex proof of claim filed on January 9, 2023 asserts a claim in the amount of $120,652.07, secured by all of WLC's assets. Claim No. 64-1. The MCA Agreement with its addenda and the UCC-1 financing statement are the supporting documentation attached to the claim. *Id.* The amended complaint alleges that eight other creditors of WLC have UCC financing statements asserting a lien on WLC's receivables and other intangible assets filed prior to the Apex financing statement. D.E. 14 at ¶ 32. All or nearly all of WLC's equipment and vehicles were overencumbered as of the petition date. *Id.* at ¶ 33. As a result of higher priority liens and the value of WLC's assets, therefore, Apex's claim is unsecured. *Id.* at ¶ 35.

The amended complaint further alleges that the MCA Agreement was a loan carrying an interest rate of 101.1%, not a sale of receivables as it purports to be. *Id.* at ¶¶ 37-46. Consequently, WLC contends, the MCA Agreement constituted a criminally usurious loan under New York law, rendering it void and unenforceable. *Id.* at ¶¶ 48-49. Further, the amended

complaint alleges that some of the payments made on the account were made directly to Mr. Klein, who then retained some of the funds for himself. *Id.* at ¶¶ 51-52.

Based on these allegations, as well as application of New York usury law, WLC asserts claims for relief including avoidance and recovery of fraudulent transfers pursuant to §§ 548 and 550 of the Bankruptcy Code against both Apex and Mr. Klein;[3] avoidance of preferential transfers pursuant to § 547 of the Bankruptcy Code; Unfair or Deceptive Trade Practices under North Carolina law, N.C. Gen. Stat. § 75-1.1, *et. seq.*; equitable subordination; and an objection to the claim filed by Apex in the bankruptcy case. WLC's allegation that the MCA Agreement is a criminally usurious loan, and thus void, is the underlying basis for most of its claims for relief.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STANDARD FOR DISMISSAL

The defendants maintain that the amended complaint should be dismissed under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. More specifically, the defendants challenge this court's subject matter pursuant to Rule 12(b)(1) based

---

[3] For example, the fraudulent transfer claim asserts, in part, that because the MCA Agreement was void and unenforceable, no reasonably equivalent value was given for the payments made by or on behalf of WLC.

5

on application of the *Rooker-Feldman* doctrine, and maintain for purposes of Rule 12(b)(6) that WLC has failed to state a claim for relief with respect to all claims except the statutory preference claim under § 547 of the Bankruptcy Code, as detailed more fully below.

Through its decisions in *Rooker v. Fidelity Trust Co.,* 23 U.S. 412 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1982), the Supreme Court established the general rule that district courts lack jurisdiction to review state court judgments. "[The doctrine] operates as a bar on federal courts (including bankruptcy courts) reviewing state court decisions; it provides that lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would reverse or modify a state court judgment." *Thomas v. FNF Capital, Inc. (In re Thomas)*, 2006 Bankr. LEXIS 4513, at *5 (Bankr. D. Md. Feb. 22, 2006) (citation omitted). If the doctrine applies, this court lacks subject matter jurisdiction over any claims that would have the effect of reversing a state court judgment, and the amended complaint would have to be dismissed pursuant to Rule 12(b)(1).

In addition, Rule 8(a)(2) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007).

The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. 662, 678-79 (2009); *see Adcock v. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal*, 556 U.S. at 681 (citations omitted).

A claim has facial plausibility when the plaintiff pleads enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims. However, a mere unsubstantiated and unsupported conclusion in place of a necessary fact required to state a cause of action is insufficient under *Iqbal* and *Twombly*.

Accordingly, in considering the motion to dismiss for failure to state a claim, the court considers all factual allegations in WLC's complaint as true, draws all reasonable inferences in WLC's favor, and considers whether the amended complaint contains sufficient factual allegations to state a claim for relief that is plausible on its face. Further, when the motion to dismiss would require the court to rule on an affirmative defense, the underlying facts sufficient to support that ruling should appear in the face of the amended complaint.

## DISCUSSION

**The Judgment Does Not Preclude WLC's Claims.**

Apex's initial arguments in support of dismissal revolve around the Stipulation of Settlement and the Judgment, and a brief description of the genesis of each is helpful to an analysis of the legal arguments. As noted, Apex initiated the New York Litigation based on a default under the MCA Agreement. WLC filed an answer in the New York Litigation, asserting, among numerous other defenses, that the obligations under the MCA Agreement violate applicable civil and criminal usury laws.[4] *See* D.E. 10-5 at 7. Thereafter, the parties entered a Stipulation of Settlement, which provided that the "action was commenced because of the Defendants' [WLC and its principal] default in the performance of their obligations as detailed in a Revenue Purchase Agreement . . . whereby Plaintiff [Apex] was to be paid $337,500.00 by or on behalf of Defendants." D.E. 10-6 at 1. Further, it was stipulated and agreed "that this action is settled for the sum of $165,000.00," with the terms of payment provided. The Stipulation of Settlement also provided that in the event of default, Apex had the right, without notice to WLC, "to enter judgment for $216,217.94 (the current remaining balance of the amount demanded in Plaintiff's Verified Complaint), together with costs, interest and disbursements less any amounts paid hereunder." *Id.*

---

[4] The pleadings in the New York Litigation, as well as the Stipulation of Settlement, are attached to the memorandum in support of Apex's motion to dismiss. In reviewing a Rule 12(b)(6) motion, courts may properly take judicial notice of matters of public record. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Further, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, WLC specifically refers to the New York Litigation and the Stipulation of Settlement in the amended complaint, such that the documents submitted by Apex are referenced in the amended complaint and/or are a matter of public record. Accordingly, they are proper for consideration as part of the present motion to dismiss and may be considered by the court.

On August 16, 2022, Mr. Klein as counsel for Apex signed and filed an Affirmation of Default and requested that the clerk "enter judgment, pursuant to CPLR 3215, against" WLC and its principal. The Judgment, attached to the amended complaint as Exhibit A, recites that "Plaintiff and Defendants had entered into a Stipulation of Settlement that had been filed with the Court and Defendants have defaulted in the performance of their obligations thereunder and, pursuant thereto, have permitted Plaintiff to enter Judgment against all Defendants." D.E. 14 at 16.

New York CPLR § 3215 governs default judgments, and subsection (i) provides as follows:

> **(i) Default judgment for failure to comply with stipulation of settlement.** 1. Where, after commencement of an action, a stipulation of settlement is made, providing, in the event of failure to comply with the stipulation, for entry without further notice of a judgment in a specified amount with interest, if any, from a date certain, the clerk shall enter judgment on the stipulation and an affidavit as to the failure to comply with the terms thereof, together with a complaint or a concise statement of the facts on which the claim was based, and, if applicable, a statement that the interest rate for consumer debt pursuant to section five thousand four of this chapter applies.
>
> * * *

NY CPLR § 3215(i). Unlike default judgment under the Federal Rules of Civil Procedure, which may be entered only upon the failure of a defendant to file answer (or where the answer has been stricken for some reason), default judgment under NY CPLR § 3215(i) may be entered at any time in the litigation, and by extension whether or not the defendant has filed answer, denied the allegations in the complaint, or asserted defenses – it is based upon the breach of a stipulation of settlement, which may itself be reached and finalized "early in the action, or during discovery, or while the parties are awaiting trial, or during the trial itself." *See* NY CPLR § 3215; Hon. Mark C. Dillon, Practice Commentaries, McKinney's Cons. Laws of NY, CPLR C3215:28 (2021).

9

Based on the Judgment, the defendants contend that WLC is precluded from asserting its claims in this forum for two reasons: first, they contend that this court lacks subject matter jurisdiction to consider its claims pursuant to the *Rooker-Feldman* doctrine[5] and thus must be dismissed pursuant to Rule 12(b)(1). D.E. 10 at 13. Second, they maintain that the Judgment is a final determination on the merits of the claims and defenses asserted in the New York Litigation, which would preclude WLC from asserting its claims on various theories of estoppel and thus the amended complaint must be dismissed pursuant to Rule 12(b)(6). *Id.* at 18.

### The Applicability of *Rooker-Feldman*

The *Rooker-Feldman* doctrine recognizes the principle that appellate jurisdiction to reverse or modify state court judgments is lodged exclusively with state appellate courts and the United States Supreme Court, and, accordingly, it articulates a jurisdictional limitation on lower federal courts' review of state court judgments. *See Burcam Capital II, LLC v. U.S. Bank Nat'l Ass'n* (*In re Burcam Capital II, LLC*), 539 B.R. 96, 99 (Bankr. E.D.N.C. 2015) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)). To establish the application of *Rooker-Feldman*, the defendants must show that WLC, as the losing party in the New York Litigation, has filed this proceeding to seek what is, in substance, appellate review of the Judgment by this court. As noted in the defendants' brief, the key question is "whether a party seeks the federal district court to review a state court decision and thus pass on the merits of that state decision," *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997), or, put another way, "to readjudicate the same issues decided in the state court proceeding[]." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 201 (4th Cir. 2000). D.E. 10 at 14. The defendants

---

[5] The doctrine takes its name from two United States Supreme Court Cases: *Rooker v. Fidelity Trust Co.,* 23 U.S. 412 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1982).

contend that the Judgment "determined the enforceability and validity of the MCA Agreement" and that the amended complaint requests a determination that requires this court to "scrutinize and invalidate" the Judgment. *See* D.E. 10 at 16.

The defendants' argument relies on a broad view of the *Rooker-Feldman* doctrine, but that doctrine has been narrowed in recent years[6] and requires a clear effort by the plaintiff to have the state court order effectively reversed. As the *Exxon* Court made clear, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293 (citation and internal quotemarks omitted). Here, WLC's claims do not seek review on the merits of any decision from another court.

Specifically, the Judgment was entered as a result of WLC's breach of the Stipulation of Settlement, with entry of that judgment provided for by statute as cited above. There was no litigation on the merits of the complaint in the underlying action that determined the character of the MCA Agreement. Put another way, the enforceability of the MCA Agreement was not determined by the state court; the only issue before the court with respect to the Judgment was whether WLC defaulted under the Stipulation of Settlement. This distinction is important because Apex's filed proof of claim and alleged security interest are based on the MCA Agreement, not the Stipulation of Settlement or the Judgment. In addition, none of WLC's claims require review or reversal of the Judgment. It is apparent that the *Rooker-Feldman* doctrine does not preclude prosecution of the Bankruptcy Code-based preference and voidable transfer avoidance claims; WLC's claims for equitable subordination and unfair and deceptive

---

[6] *See generally Vicks v. Ocwen Loan Servicing, LLC*, 676 Fed. Appx. 167, 168 (4th Cir. 2017) (per curiam).

11

trade practices are independent bases for relief; and WLC's objection to Apex's claim – like the claim itself – is based on unenforceability of the MCA Agreement, not the Judgment or Stipulation of Settlement.

Finally, as will be discussed in conjunction with the estoppel arguments, there is nothing in the Judgment that would need to be set aside for WLC to obtain the relief sought on the claims in the amended complaint, as the Judgment merely establishes the amount of debt resulting from the default under the Stipulation of Settlement. This case is distinguishable from *Smith v. Mariner Fin.*, 2020 U.S. Dist. LEXIS 91482 (W.D. Ky. May 26, 2020), cited by Apex at the hearing, because there, the plaintiff sought a determination that the interest awarded *in a state court's default judgment* was usurious, such that it was *the judgment itself* that caused the harm of which the plaintiff complained. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *Id.* at *20 (citing *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012)). WLC's claims arise from the MCA Agreement and the collection of payments thereunder, not from the Judgment. Accordingly, the *Rooker-Feldman* doctrine does not apply and this court maintains jurisdiction over the claims.

### **Estoppel**

Having determined that *Rooker-Feldman* does not divest this court of jurisdiction over WLC's claims, the court turns to the defendants' related argument that those claims are precluded through theories of res judicata, collateral estoppel, equitable estoppel, and judicial estoppel, all of which are affirmative defenses that would have to be established on the face of the amended complaint to support dismissal.

Because federal courts apply the law of the state in which a judgment was rendered to determine the preclusive effect of that judgment, the court turns again to applicable New York law. There, res judicata or claim preclusion requires adjudication on the merits. As WLC points out, an issue is not actually litigated and claim preclusion does not apply if the issue was settled by stipulation, *Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 886 (E.D.N.Y. 2021), and where the stipulation is entered without prejudice to judgment being entered on default. *Id.* That is precisely what occurred in this case. Further, the Judgment establishes only the amount of the obligation as a result of the default under the Stipulation of Settlement, without any determination of the validity of the MCA Agreement. Accordingly, res judicata does not preclude the claims in the amended complaint.

The doctrine of collateral estoppel, or issue preclusion, forecloses the re-litigation of issues of fact or law that are identical to issues that have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate. *See Sedlack v. Braswell Servs. Group, Inc*., 134 F.3d 219, 224 (4th Cir. 1998) (citation omitted).

To apply collateral estoppel to an issue or fact, the court must determine that

(1)     the issue or fact is identical to the one previously litigated;
(2)      the issue or fact was actually resolved in the prior proceeding;
(3)     the issue or fact was critical and necessary to the judgment in the prior proceeding;
(4)     the judgment in the prior proceeding is final and valid; and
(5)     the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*Id*. Because orders entered by the state courts are given full faith and credit by federal courts, findings in final orders are not subject to review by this court and are entitled to collateral

estoppel effect. The doctrine of collateral estoppel is an affirmative defense that Apex bears the burden of establishing. Apex has failed to do so here.

As noted above, the Judgment in the New York Litigation was entered pursuant to New York state law providing for entry of default judgment on the breach of a stipulation. Unlike a default judgment in North Carolina, the statutory default judgment at issue here does not have preclusive effect on the merits of the underlying lawsuit. Instead, "an issue is not actually litigated if it was settled by stipulation." *Matter of Singh v. N.Y. State Div. of Human Rights*, 186 A.D.3d 1694, 1696 (N.Y. App. Div. 2d Dep't 2020) (internal citations omitted); *see also Kaufman v. Eli Lilly & Co*., 482 N.E.2d 63, 68 (N.Y. 1985) ("An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation.") (citing Restatement [Second] of Judgments § 27 comments d, e, at 255-257; *Gilberg v. Barbieri*, 423 N.E.2d 807 (N.Y. 1981)).

Apex contends that because WLC filed an answer with defenses asserting criminal usury arguments in the New York Litigation, the entry of the Judgment was a determination that those defenses failed, such that those same defenses cannot be asserted now. The court is not persuaded: Under New York Law, WLC's decision to file an answer in response to Apex's initial complaint does not amount to actual litigation, because the *underlying* litigation was never reduced to judgment. *See Douglas Elliman, LLC v. Silver*, 39 N.Y.S.3d 51, 54 (N.Y. App. Div. 2d Dep't 2016) (concluding that res judicata did not apply where a stipulation was entered and the issues were not actually litigated). The court determines that the Judgment was not based on the MCA Agreement and the New York court made no determinations as to the merits of the MCA Agreement.

14

For the same reasons, the defendants' arguments that WLC is equitably and judicially estopped from contending that the MCA Agreement is criminally usurious must fail. The defendants contend that by signing the Stipulation of Settlement, WLC acknowledged that a sum was validly owed to Apex under the MCA Agreement, and that its position in the amended complaint is factually incompatible. Once again, however, the application of New York law on entry of stipulations demonstrates that WLC did not abandon its arguments about the nature of the MCA Agreement in a way to make its claims in this adversary proceeding inconsistent with any position taken before, and accepted by, another tribunal.

Based on New York claim and issue preclusion law and the nature of the Judgment as a creature of New York statute, the court concludes that the claims in the amended complaint are not precluded by any theory of estoppel.

**The Stipulation of Settlement Does Not Waive or Release WLC's Claims**

Apex contends that the claims against it were expressly waived and released by WLC in the Stipulation of Settlement, and thus WLC's claims fail as a matter of law.[7] D.E. 10 at 29.  In support of its argument, Apex cites *Assurance Group, Inc. v. Bare*, 245 N.C. App. 566, 782 S.E.2d 581 (2016), which states that where an otherwise properly alleged claim also alleges facts showing that a claim is barred by a settlement agreement or release, the claim is subject to dismissal under Rule 12(b)(6). *Id.* at 30.

The paragraph of the Stipulation of Settlement in question reads:

> As of the date hereof: (i) Defendants hereby release and forever discharge Plaintiff, their respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are directly or indirectly related in any

---

[7] Apex concedes that the Bankruptcy Code-based claims for avoidance have not been released.

15

manner to the Agreement referenced in Plaintiff's Verified Complaint in the instant litigation (the "Agreement'), including but not limited to any claims that were or could have been asserted.

D.E. 10-6 at 2, ¶ 3.

The court observes that the release does not purport to release defenses, and one could interpret the claim objection as a defense to payment of the claim asserted by Apex. Further, and more importantly, under New York law as cited by WLC, a "settlement agreement purporting to compromise and release a borrower's usury claim is void and unenforceable if the original usurious obligation transcends into the parties' subsequent agreement." *Adar Bays, LLC v. 5Barz Int'l, Inc.*, 2018 U.S. Dist. LEXIS 139843, at *16 (S.D.N.Y. August 16, 2018) (citation omitted). Accordingly, the claim objection and other claims based on the allegation of usury have not been waived. And, like estoppel, waiver is an affirmative defense that has not been established through the facts alleged in the amended complaint or as a matter of law based on the Stipulation of Settlement and resulting Judgment.

**New York Law Governs the Claims Underpinned by Allegations of Usury**

While the MCA Agreement purports to be a sale of receivables, the amended complaint contends that it is in fact a loan.[8] In the motion to dismiss, the defendants maintain that if the MCA Agreement is a loan, which it denies, then the claims must fail as a matter of law. This position is based on a novel legal argument: that is, that WLC's claims depend upon a finding that the MCA Agreement is a criminally usurious loan under *New York* law, but the defendants assert that *North Carolina* law demands that this court disregard the choice of law provision in the MCA Agreement – which, in turn, would lead to a failure of all usury-related claims because, unlike New York, North Carolina has no limit on the interest rate that may be charged to a

---

[8] The defendants concede that the amended complaint alleges sufficient facts (albeit facts that they deny) to support WLC's claim that the MCA Agreement is a loan.

16

corporate borrower. *See* D.E. 10 at 31. This argument rests on Apex's reading of North Carolina

General Statute § 24-2.1(a) as requiring *all* loans to North Carolina residents to be governed by

North Carolina law, regardless of any choice of law provision. Apex maintains that the New

York choice of law provision in the MCA Agreement must be disregarded, and North Carolina's

exemption from its usury law for North Carolina corporate borrowers must be applied. D.E. 10 at

37.

      As WLC highlights in its brief, North Carolina honors the choice of law parties adopt in a

contract so long as the chosen law "does not violate a fundamental public policy of the state or

otherwise applicable law." D.E. 31 at 14, citing *IPayment, Inc. v. Grainger*, 257 N.C. App. 307,

312, 808 S.E.2d 796, 800 (2017). In other words, North Carolina gives effect to parties' freedom

to contract with respect to choice of law unless there is a statute ("otherwise applicable law") or

an intervening public policy that dictates otherwise. The defendants contend that North Carolina

General Statute § 24-2.1(a) is the "otherwise applicable law" that overrides the choice of law

provision in the MCA Agreement.

      North Carolina General Statute § 24-2.1(a) provides:

> (a) For purposes of this Chapter, any extension of credit shall be deemed to have
> been made in this State, and therefore subject to the provisions of this Chapter if
> the lender offers or agrees in this State to lend to a borrower who is a resident of
> this State, or if such borrower accepts or makes the offer in this State to borrow,
> regardless of the situs of the contract as specified therein.

N.C. Gen. Stat. § 24-2.1(a). Contrary to Apex's argument, there is nothing in this statute that

invalidates a party's choice of law. Instead, it overrides a specified *situs* of the contract.

      The court acknowledges that there is a line of cases overriding choice of law provisions

in consumer loan agreements subjecting consumers to interest rates that would be usurious under

North Carolina law, such as *Wall v. Automoney, Inc*., 284 N.C. App. 514, 877 S.E.2d 37 (2022).

There, however, the basis for disregarding the choice of law provisions was public policy (as opposed to "other applicable law"), articulated as follows: "the stated public policy of North Carolina [is] to **protect** North Carolina resident borrowers through the application of North Carolina usury laws." *Id.* at 50 (emphasis added). This is where the defendants' novel argument takes a turn into the slightly surreal, because applying that public policy to prohibit corporations from bargaining for a *more favorable* interest rate limitation would bend North Carolina usury law beyond recognition. The purpose of North Carolina usury law is to "protect North Carolina borrowers" by imposing interest rate limitations to what would otherwise amount to usurious loans. N.C. Gen. Stat. § 24-2.1(g). Perhaps recognizing a corporation's more robust ability to bargain against its counterparties in ways that are not generally available to non-corporate borrowers, this law exempts corporate borrowers from its protection. Put differently, the law respects a corporation's freedom to contract. Yet, Apex reads a law that fundamentally recognizes a corporation's freedom to contract, to instead require a corporation to waive interest rate limitations.

Again, the court is not persuaded by this implausible interpretation. Instead, the court finds that the choice of law provision, and thus New York law, controls the MCA Agreement. WLC's amended complaint alleges that the MCA Agreement is a loan and not a sale, and that the loan terms are criminally usurious under New York law. Accordingly, the claims stemming from the allegations of criminal usury are sufficient to survive the motion to dismiss.

**The Amended Complaint States Plausible Claims for Relief against Mr. Klein.**

The amended complaint asserts claims against Mr. Klein individually under §§ 547, 548, and 550 of the Bankruptcy Code. Mr. Klein contends that he acted only as counsel for Apex and not as a transferee. The question before the court at this juncture in the case is simply whether

18

the amended complaint contains sufficient facts to make it plausible that Mr. Klein acted on his own behalf and not solely as a conduit for the payments to Apex. The court concludes that it does.

The amended complaint alleges that Mr. Klein retained at least $12,000 of the payments made by or on behalf of WLC toward the Apex debt for his own benefit, and that Mr. Klein was the initial transferee of the payments the amended complaint seeks to avoid. D.E. 14, ¶¶ 51, 52, 120. For purposes of Rule 12(b)(6), WLC has stated a claim for relief against Mr. Klein. Whether the evidence will bear out those allegations is a question for another day.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the amended complaint is DENIED. Pursuant to Rule 7012(a), the defendants are directed to file an answer within 14 days of entry of this order.

## END OF DOCUMENT

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he is, and at all times hereinafter was, more than eighteen (18) years of age, and on this date, a true and accurate copy of the foregoing **NOTICE OF APPEAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA** was electronically filed utilizing the CM/ECF system, notification of which was remitted to the following ECF participants:

> William Janvier
> Kathleen O'Malley
> STEVENS    MARTIN    VAUGHN    &    TADYCH, PLLC
> 6300 Creedmoor Road, Suite 170-370
> Raleigh, North Carolina 27612
> *Counsel for Plaintiff Williams Land Clearing, Grading and Timber Logger, LLC*

Executed this, the 22nd day of February, 2024.

> s/Joseph Z. Frost
> JOSEPH Z. FROST, NCSB No. 44387
> jfrost@bbflawfirm.com
> BUCKMILLER, BOYETTE & FROST, PLLC
> 4700 Six Forks Road, Suite 150
> Raleigh, North Carolina 27609